UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jamal Samaha, Lauren Coleman, Jordan Meyer, Andy Delany, Mary Grace, Bonnie Brown, and Jonathan Mason, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>The City of Minneapolis; Minneapolis Mayor Jacob Frey, *in his official and individual capacity*; Minneapolis Chief of Police Medaria Arradondo, *in his official and individual capacity*; and John Does 1-100, *in their official and individual capacities*,<br><br>Defendants. | Case No. 20-cv-01715 (SRN/DTS) |

## MEMORANDUM IN SUPPORT OF MOTION TO CONSOLIDATE CASES

The tragic and senseless murder of George Floyd, and the heavy-handed law enforcement response that followed, have led to a wave of civil rights litigation in this District. Through this motion, Plaintiffs ask this Court to consolidate three of these pending actions, *Goyette v. City of Minneapolis*, 20-cv-01302; *Armstrong v. City of Minneapolis*, 20-cv-01645; and *Samaha v. The City of Minneapolis*, 20-cv-01715, for purposes of pre-trial proceedings and discovery. Consolidation under Federal Rule of Civil Procedure 42 would allow for the most just and efficient resolution of these cases.

These lawsuits share a host of common factual and legal issues. At bottom, they all arise from the same course of events: the murder of George Floyd and the law enforcement response to protests in the following weeks. The plaintiffs in these cases are protesters and

journalists who were subjected to unconstitutional force and arrests during the protests that followed. The cases largely share the same defendants—all three cases, for example, name the City of Minneapolis as a defendant. And the cases raise many common legal issues, ranging from questions of municipal liability under § 1983, which require showing the existence of an unlawful policy or custom, to questions of qualified immunity, and, at bottom, whether specific Minneapolis police officers used excessive force. These three pending cases also seek to certify classes of similarly-situated individuals. Importantly, consolidation will ensure that questions related to class certification will be resolved so as to avoid conflicting standards of conduct for class members and defendants alike. For these reasons, consolidation for purposes of pre-trial proceedings and discovery will conserve critical time, energy, and resources for the parties and this Court. The motion should be granted.

I.  **FACTUAL BACKGROUND.**

The tragic facts giving rise to these cases are well known to this Court. On the evening of May 25, 2020, former Minneapolis Police Department officer Derek Chauvin pinned Mr. George Floyd—an unarmed black man who became increasingly immobile, unresponsive, and eventually unconscious—to the ground with his knee pressing on Mr. Floyd's neck. *Samaha v. The City of Minneapolis*, 20-cv-01715, Dkt. 1 at 8. Two other former MPD officers—Thomas Lane and J. Alexander Keung—assisted in holding Mr. Floyd down. *Id.* A fourth former Minneapolis Police Department officer—Tuo Thao—stood guard nearby to ensure that pedestrians and bystanders recording the situation on their phones stayed on the sidewalk. *Id.* at 8-9. These bystanders pleaded with the former

officers to "Get off of him!" *Id.* at 9. Mr. Floyd repeatedly pleaded for his life, repeating "I can't breathe." *Id.* After kneeling on his neck for what we now know was 9 minutes and 29 seconds, and only after the paramedics arrived, did Chauvin get off of Mr. Floyd's neck. *Id.*

Only 20 minutes after Mr. Floyd's initial arrest, his limp body was loaded into an ambulance and he was pronounced dead at a nearby hospital around 9:25 pm. *Id.* Mr. Floyd died in the custody and at the hands of the MPD. A bystander being held back by Thao, Darnella Frazier, posted her recording of the incident on Facebook Monday night. *Id.* Her video of Mr. Floyd's death had gone viral by the next morning. *Id.*

In the days and weeks that followed, protesters took to the streets to voice their anger at Mr. Floyd's killing and police brutality generally. *Id.* at 10-35. Law enforcement agencies responded to these peaceful protests with unjustified, unnecessary, and excessive force. *Id.* No summary could possibly do justice to the descriptions of law enforcement's response described in the relevant pleadings. Broadly speaking, however, the complaints describe dozens of incidents where law enforcement agents targeted peaceful protesters— without justification or warning—with excessive force, arrests, rubber bullets, tear gas, pepper spray, and mace. Law enforcement also deliberately targeted journalists who were covering the protests. See *Goyette v. City of Minneapolis*, 20-cv-01302. The results were shocking and gruesome. Law enforcement's pattern of excessive force severely inhibited protesters and journalists in their ability to further participate in and cover lawful protest activities—dramatically chilling expression protected by the First Amendment. *Samaha v. The City of Minneapolis*, 20-cv-01715, Dkt. 1 at 14.

## II.   FACTUAL AND LEGAL OVERLAP BETWEEN THE CASES.

These cases overlap factually and legally to a significant degree. Start with the parties: all three cases name the City of Minneapolis as a defendant; all three cases name individual John Doe Minneapolis police officers as defendants; all three named Minneapolis Chief of Police Medaria Arradondo as a defendant, but Chief Arradondo was subsequently dismissed without prejudice in his individual capacity in *Samaha* (see ECF 33) and *Armstrong* (see ECF 59)[1]; *Armstrong* and *Goyette* named Robert Kroll, a former prominent Minneapolis Police Lieutenant, union leader, and de facto police policymaker as a defendant; *Armstrong* and *Goyette* named two state officials affiliated with the Minnesota State Patrol as defendants, but those two have also been dismissed from *Armstrong* (see ECF 59).  The City of Minneapolis' motion to dismiss was denied in the *Armstrong and Samaha* cases.  Case No. 20-cv-01645-SRN-DTS, ECF No. 59; Case No. 20-cv-01715 (SRN/DTS), ECF No. 33.

The cases are further related by their factual allegations. All three cases allege a pattern and practice of unlawful police force. As a matter of common sense, all three cases concern, in large part, the same nucleus of operative fact: the killing of George Floyd and law enforcement's response to the protests that followed. The factual allegations themselves are strikingly similar. These three cases all allege a pattern of law enforcement intimidating and targeting protesters and journalists with rubber bullets, flash-bang grenades, tear gas, pepper spray and other similar weapons. The sheer volume of the

---

[1] The City of Minneapolis and Chief Arradondo answered the *Goyette* complaint and did not move to dismiss.

allegations raised across these complaints undermines any notion that the episodes of unlawful force they describe were sporadic or the result of a proverbial few bad apples. This common conduct was pervasive. Indeed, it was so pervasive that the U.S. Department of Justice has announced that it is launching an investigation.[2]

Not surprisingly, the claims raised by these cases overlap significantly. All three cases raise claims arising under § 1983, the Fourth and Fourteenth Amendments, and the First Amendment. The constitutional questions that lie at the heart of these cases—for example, whether law enforcement officers, consistent with the First and Fourth Amendments, may use less-lethal force against protesters and journalists engaged in lawful activities—are fundamentally similar. The factual-legal nexus in these complaints produces many common legal questions as well. Most obviously, all three cases seek to hold the City of Minneapolis liable as a municipal defendant under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Consequently, all three complaints allege that the City had a policy or custom of using excessive and unlawful force. Similarly, all three cases allege a related policy or custom of failing to respect the constitutional rights of law-abiding protesters and/or journalists. Each of these cases alleges that these policies and customs are evidenced by a demonstrated pattern of deliberate indifference to these constitutional violations or a failure to train law enforcement officers to respect the First, Fourth, and Fourteenth Amendment.

---

[2] Attorney General Merrick B. Garland Announces Investigation of the City of Minneapolis, Minnesota, and the Minneapolis Police Department, (2021), https://www.justice.gov/opa/pr/attorney-general-merrick-b-garland-announces-investigation-city-minneapolis-minnesota-and (last visited Apr. 22, 2021).

Other common legal questions abound. To name a few examples: the cases where claims against Medaria Arradondo and Robert Kroll remains raise common questions of supervisory liability; all of the cases raise potential common questions of qualified immunity.

These three cases are brought as putative class actions.[3] The plaintiffs in *Goyette* seek to represent a class of similarly situated journalists. The plaintiffs in *Armstrong* and *Samaha* seek to represent classes of protesters.

Finally, there is substantial overlap in the relief sought in the cases. These three cases seek injunctive or declaratory relief involving forward-looking court-ordered modifications to policies and customs observed by the Minneapolis police. And, each case seeks damages, attorney's fees, and costs. This is significant because any relief, in the form of a judgment or settlement, has the potential to bind class members in all three classes.

Procedurally, these cases are in relatively early stages. Motions to dismiss have been briefed in all three cases and decided in *Armstrong* and *Samaha*. Rule 16 conferences have been had in each case, scheduling orders have been issued, and discovery is in its earliest stages. The court in *Goyette* recently entered a temporary restraining order against the state defendants enjoining them from violating the constitutional rights of journalists covering

---

[3] A fourth pending case, *Williams v. The City of Minneapolis*, 20-cv-01303, also contains class allegations. That case is not included in this consolidation motion because it has settled on an individual basis. Pending Minneapolis City Council approval, the case is expected to be dismissed shortly.

the protests that followed the killing of Daunte Wright. (See ECF 105.) A motion for a preliminary injunction will likely be filed in the near future in *Goyette*.

There are other cases pending in this district that raise allegations similar to those made in *Armstrong*, *Samaha*, and *Goyette*. But none contain class action allegations.

## III. LEGAL STANDARD FOR CONSOLIDATION.

Federal Rule of Civil Procedure 42(a) permits a district judge to order consolidation of actions pending before the trial court that "involve a common question of law or fact." Fed. R. Civ. P. 42(a)(2).

"[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." *Enterprise Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994).

Consolidation "need not be only for trial." 9A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure ("Wright & Miller") § 2382. Consolidation "for pretrial and discovery purposes," *see, e.g.*, *In re Baycol Products Litig.*, No. 04-4350, 2005 WL 8156971, at *1 (D. Minn. Apr. 4, 2005), is "a desirable administrative technique and is within the power of the court." Wright & Miller § 2382.

In considering consolidation, the Court must evaluate:

> [W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 405 (D. Minn. 1998). Consolidation is not appropriate "if it leads to inefficiency, inconvenience, or unfair prejudice to a party." *EEOC v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998).

The Court has broad discretion in deciding whether to consolidate cases. *Enter. Bank v. Saettele*, 21 F.3d 233, 235 (8th Cir. 1994).

## IV. CONSOLIDATION FOR PURPOSES OF DISCOVERY AND PRETRIAL IS APPROPRIATE HERE.

Consolidation for purposes of pre-trial proceedings and discovery is warranted here. These civil rights cases contain a great deal of factual and legal overlap. As these cases proceed through discovery (including discovery-related motion practice), class-certification proceedings, and summary-judgment briefing and argument, this Court and the parties would reap substantial efficiencies from consolidation. By the same token, there is little to no risk of confusion, delay, or prejudice by consolidating these cases.

It is important to emphasize that this motion *does not* ask the Court to consolidate any of these cases for *trial* at this juncture. While some degree of consolidation for trial may be appropriate, that question is best left for another day, when the discovery and pre-trial proceedings have advanced to a stage sufficient to understand the nature and scope of the claims to be tried.

With respect to consolidation for discovery and pre-trial proceedings, however, each of the relevant factors strongly supports consolidation.

To begin, there is an acute risk of "inconsistent adjudications of common factual and legal issues" without consolidation. *Chill*, 181 F.R.D. at 405. As detailed above,

common factual and legal issues abound in these cases. Without consolidation, the same Defendant—for example, the City of Minneapolis—could find itself subject to inconsistent rulings on a host of issues. And, while the named plaintiffs in these cases are distinct, the class members are not, and potentially overlapping classes could similarly result in inconsistent injunctions and adjudications. *Cf.* Fed. R. Civ. P. 23(b)(1)(A).

The burden on the parties, witnesses, and judicial resources similarly favors consolidation. *Chill*, 181 F.R.D. at 405. It would not be surprising if, for example, the plaintiffs in all three pending actions sought to depose Minneapolis Police Chief Medaria Arradondo about the Department's use-of-force policies, training protocols, disciplinary procedures, and other related topics. To state the obvious: it would not serve anyone to conduct three separate depositions on these same topics. This is just one example among many. Document requests, requests for admission, and third-party subpoenas will surely seek to illuminate a wide variety of common factual issues. And, to the extent that defendants resist discovery on the ground that it is unduly burdensome or not "proportional to the needs of the case," *see* Fed. R. Civ. P. 26(b)(1), consolidation will ensure that the discovery is appropriate in light of these cases *overall* and not needlessly duplicative for the defendants and their witnesses. Consolidation would similarly ease the burdens on plaintiffs. From their perspective, consolidation provides "the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Self-evidently, consolidation also would conserve this Court's resources.

The length of time required to "conclude multiple suits as against a single one" also counsels in favor of consolidation. *Chill*, 181 F.R.D. at 405. Without question, these cases raise complex legal, factual, and case-management issues. But consolidating the cases will not multiply or extend these proceedings. The opposite conclusion is stronger and more likely: only through streamlining these suits can this Court employ appropriate case-management techniques to ensure that the litigation proceeds in a straightforward and timely fashion.

The "relative expense to all concerned" also strongly favors consolidation. *Id.* Failing to consolidate these cases would result in a tremendous amount of repetitive litigation activity and parallel proceedings in this Court. Without consolidation, the City of Minneapolis, other Defendants and the Court will be faced with the expense of three separate, but substantially identical, cases proceeding on parallel tracks at the same time. These needless expenses can be avoided through consolidation.

On the other side of the ledger, consolidation presents no risk of prejudice or possible confusion. *Id.* These factors are more appropriately evaluated in the context of consolidating cases for trial—a decision plaintiffs believe is premature. There certainly is no risk of prejudice or confusion to any party by having a single judge and magistrate overseeing merits and class-certification discovery, class-certification motions, and summary-judgment motions. What's more, consolidation for discovery and pre-trial proceedings will help this Court determine whether some consolidation for trial may ultimately prove useful.

Finally, consolidation in this Court, before Judge Nelson and Magistrate Judge Schultz, is appropriate and reasonable. Of the three pending cases, Judge Nelson is assigned to two of them (*Armstrong, Samaha*) and Magistrate Judge Schultz is already assigned to all three of them (*Armstrong, Samaha, Goyette*).

Counsel for Plaintiffs in this case have met and conferred with counsel for plaintiffs and defendants in the three cases. All of the plaintiffs in the three cases support the relief sought herein.[4] Although "[t]he consent of the parties is not required by . . . rule to accomplish . . . consolidation," Wright & Miller § 2383, the broad agreement among the parties further illuminates the wisdom of consolidating these cases for discovery and pretrial proceedings.

For these reasons, the three pending cases identified should be consolidated before this Court.

Dated: June 16, 2021

*/s/ Joshua J. Rissman*
Daniel E. Gustafson (#202241)
Joshua J. Rissman (#391500)
Brittany Resch (#397656)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
jrissman@gustafsongluek.com
bresch@gustafsonguek.com

***Attorneys for Plaintiffs Samaha, Coleman, Meyer, Delany, Grace, Brown, and Mason***

---

[4] Plaintiffs note that two motions to dismiss remain pending in *Goyette*. In addition, a motion for a preliminary injunction is set to be heard by the Court on July 28, 2021.